FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 14, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MATTHEW ADAM COUMONT,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:16-CV-00222-JTR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 14, 16. Attorney Dana C. Madsen represents Matthew Adam Coumont (Plaintiff); Special Assistant United States Attorney Richard M. Rodriguez represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for

ORDER GRANTING PLAINTIFF'S MOTION . . . . - 1

additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income (SSI) on June 7, 2012, Tr. 159, alleging disability since May 1, 2010, Tr. 144, due to neuropathy in his legs and deafness in his right ear. Tr. 163. The application was denied initially and upon reconsideration. Tr. 92-95, 102-105. Administrative Law Judge (ALJ) Donna L. Walker held a hearing on December 11, 2014 and heard testimony from Plaintiff, medical experts, Thomas McKnight, Ph.D. and James M. Haynes, M.D., and vocational expert, Thomas A. Polsin. Tr. 29-71. The ALJ issued an unfavorable decision on February 4, 2015. Tr. 11-25. The Appeals Council denied review on April 27, 2016. Tr. 1-6. The ALJ's February 4, 2015 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on June 21, 2016. ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 42 years old at the date of application. Tr. 144. He completed the twelfth grade in 1988. Tr. 164. He reported upon application that he last worked in October of 2011 and stopped working due to his conditions. Tr. 163. His work history includes the job of carpenter/construction worker. Tr. 164, 179.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is

not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. § 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(v).

# ADMINISTRATIVE DECISION

On February 4, 2015, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 7, 2014, the date of application. Tr. 13.

At step two, the ALJ determined Plaintiff had the severe impairment of bilateral lower extremity peripheral neuropathy, secondary to possible acute alcohol abuse. Tr. 14.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 17.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of light work with the following limitations:

> The claimant can lift or carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk up to six hours in an eight hour day, and sit without limitation. The claimant has unlimited ability to push or pull notwithstanding his limitations in lifting and carrying. The claimant can frequently climb ramps and stairs, never climb ladders, ropes, and scaffolds, but has no manipulative or visual limitations. The claimant should avoid concentrated exposure to extreme cold, vibration, hazards such as machinery and heights, and even moderate exposure to noise. The claimant has unlimited ability to work in an environment with heat, humidity, fumes, odors, dusts, gases, and poor ventilation.

Tr. 18. The ALJ identified Plaintiff's past relevant work as construction worker and concluded that Plaintiff was not able to perform this work. Tr. 23.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of airline security

representative, mailroom clerk, and storage rental clerk. Tr. 24. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the date of application, June 7, 2012, through the date of the ALJ's decision, February 4, 2015. Tr. 25.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly weigh and consider the medical opinions in the record, (2) failing to find that Plaintiff's mental health impairments were severe at step two, (3) failing to properly consider Plaintiff's credibility, and (4) failing to form a proper residual functional capacity determination.

## DISCUSSION

**A.   Medical Opinions**

Plaintiff argues that the ALJ erred in the weight she gave to the opinions of John Arnold, Ph.D., Thomas McKnight, Ph.D., and James M. Haynes, M.D. ECF No. 14 at 15-17.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons,

and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-831. The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

1. **John Arnold, Ph.D.**

On December 8, 2014, Dr. Arnold evaluated Plaintiff and diagnosed him with undifferentiated somatoform disorder, major depressive disorder, generalized anxiety disorder, alcohol dependence in self-reported sustained partial remission, personality disorder, and rule out borderline intellectual functioning. Tr. 320-321. Dr. Arnold completed a Mental Medical Source Statement form in which he gave Plaintiff a marked[1] limitation in the abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and to accept instruction and respond appropriately to criticism from supervisors. Tr. 323-324. Additionally, Dr. Arnold opined that Plaintiff had a moderate[2] limitation in the

---

[1] A marked limitation is defined as "[f]requent interference on the ability to function in a work setting (i.e. 1/3 to 2/3 of an 8 hour workday)." Tr. 322.

[2] A moderate limitation is defined as an "[o]ccasional interference on the ability to function in a work setting (i.e. up to 1/3 of an 8 hour workday)." Tr. 322.

abilities to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to sustain an ordinary routine without special supervision, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, to respond appropriately to changes in the work setting, to be aware of normal hazards and take appropriate precautions, and to set realistic goals or make plans independently of others. Tr. 322-324.

The ALJ gave this opinion "little weight," stating that "as noted by Dr. McKnight, Dr. Arnold's opinions are internally inconsistent, based on the claimant's subjective complaints, and yet also inconsistent with the claimant's statements throughout the record." Tr. 16.

The ALJ's first reason for rejecting Dr. Arnold's opinion, that it was internally inconsistent, is not legally sufficient. The Ninth Circuit has held that internal inconsistencies in a provider's report and opinion meets the clear and convincing standard. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, here the ALJ failed to provide any more than the conclusion that internal inconsistencies existed. She did not state what in Dr. Arnold's report or opinion was inconsistent. Tr. 16. Earlier in the decision, the ALJ noted that Dr. McKnight discounted Dr. Arnold's conclusions and summarized Dr. McKnight's findings of inconsistencies as "Dr. Arnold appreciated memory, concentration, and attending within normal limits, and opined that the claimant could follow detailed instructions, but provided diagnosis of impairments including somatoform disorder, generalized anxiety disorder, and personality disorder." Tr. 15. However, citing a doctor's opinion is not equivalent to ALJ making findings. Additionally, the ALJ's restatement of Dr. McKnight's summary of Dr. Arnold's opinion is inaccurate. The ALJ stated that Dr. McKnight found that Dr. Arnold "opined that the claimant could follow detailed instructions," Tr. 15, but Dr.

Arnold actually opined that Plaintiff had a moderate limitation in the ability to understand, remember, and carry out detailed instructions. Tr. 322-323. As such, this reason fails to meet the clear and convincing standard.

The ALJ's second reason for rejecting Dr. Arnold's opinion, that it was based on Plaintiff's unreliable statements while simultaneous finding the opinion inconsistent with Plaintiff's statements, is not legally sufficient. The ALJ is required to set out a detailed and thorough summary of the facts and conflicting clinical evidence and state her interpretation thereof, and make findings. *Magallanes*, 881 F.2d at 751. Here, the ALJ failed to articulate how Dr. Arnold's opinion could be both based on Plaintiff's statements and inconsistent with Plaintiff's statements. Tr. 15-16. As such, the reason falls short of the specific and legitimate standard, let alone, the heightened clear and convincing standard.

The ALJ erred in her treatment of Dr. Arnold's opinion. Plaintiff argues that Dr. Arnold's opinion should be credited as true and benefits should be awarded, however, this Court finds that considering the ALJ's credibility determination included some clear and convincing reasons supporting the determination that Plaintiff's self-reports were less than fully credible. Therefore, the case is remanded for additional proceedings to address the medical source opinions in the file.

### 2. Thomas McKnight, Ph.D.

Plaintiff also challenged the weight the ALJ provided to the testimony of the medical expert who appeared at the hearing, Dr. McKnight. ECF No. 14 at 16-17. Dr. McKnight testified that Plaintiff had no medical determinable mental health impairments. Tr. 49-50.

A nonexamining physician's opinion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician. *Lester*, 81 F.3d at 831 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450,

1456 (9th Cir. 1984)). In *Gallant,* the Court held that "the report of [a] non-treating, non-examining physician, combined with the ALJ's own observance of [the] claimant's demeanor at the hearing" did not constitute "substantial evidence" and, therefore, did not support the Commissioner's decision to reject the examining physician's opinion that the claimant was disabled. 753 F.2d at 1456. The opinion of a nonexamining physician may serve as substantial evidence only when it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 104.

Considering the ALJ is instructed to readdress the opinion of Dr. Arnold, whose opinion contradicts Dr. McKnight's, the ALJ will also readdress Dr. McKnight's opinion on remand. Should the ALJ choose to give Dr. McKnight's opinion weight, she will cite to supporting evidence with specificity.

   **3. James M. Haynes, M.D.**

Plaintiff challenged the weight the ALJ gave to the testimony of the medical expert who appeared at the hearing, Dr. Haynes. ECF No. 14 at 15-16.

At the hearing, Dr. Haynes testified that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds. Tr. 39. Standing and walking he limited to six hours with two to four hours at one time. *Id*. He opined there were no limitations with sitting, postural limitations or environmental restrictions. *Id*. Additionally he would keep Plaintiff off ladders and scaffolds. *Id*. The ALJ then gave Dr. Haynes' opinion "significant weight" stating that it was based on a review of the longitudinal record and was consistent with and supported the residual functional capacity determination. Tr. 22.

Plaintiff argues that the ALJ put Dr. Haynes' opinion before that of his treating and examining providers. ECF No. 14 at 16. However, the only other examining or treating opinion in the record regarding Plaintiff's physical residual functional capacity was that of Dr. Hull, an examining provider who opined Plaintiff "would have significant difficulty with any job requiring prolonged

standing or walking, and should certainly be avoiding any work requiring climbing or ladders." Tr. 284. Dr. Hull's opinion does vary from Dr. Haynes' opinion in the extent to which Plaintiff can stand/walk, but it would not be considered work preclusive as it conforms to the definition of sedentary work. *See* 20 C.F.R. § 416.967(a). Nonetheless, because the case is being remanded to address the opinions surrounding Plaintiff's mental health impairments, the ALJ is further instructed to readdress the opinions regarding Plaintiff's physical residual functional capacity on remand.

**B.     Step Two**

Plaintiff challenges the ALJ's finding that Plaintiff's mental health impairments were not severe at step two. ECF No. 14 at 17-18.

Step-two of the sequential evaluation process requires the ALJ to determine whether or not the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Id*. at 1290. The step-two analysis is "a *de minimis* screening device to dispose of groundless claims." *Id*. In her step two determination, the ALJ found Plaintiff's anxiety to be not severe. Tr. 21.

Considering the ALJ erred in her treatment of Dr. Arnold's opinion, the ALJ's step two finding that Plaintiff lacked any severe mental health impairments cannot stand. Upon remand, the ALJ is to make a new step two determination.

**C.     Credibility**

Plaintiff contests the ALJ's adverse credibility determination in this case. ECF No. 14 at 11-15.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific

cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281; *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff less than fully credible concerning the intensity, persistence, and limiting effects of his symptoms. Tr. 19. The ALJ reasoned that Plaintiff was less than fully credible because (1) the medical evidence did not support his allegations, (2) Plaintiff inconsistently reported his alcohol use, (3) Plaintiff made inconsistent statements regarding his work history, and (4) the record contained evidence that Plaintiff exaggerated his symptoms.

### 1. Medical Evidence

Plaintiff challenges the ALJ's determination that his statements were inconsistent with the medical evidence in the record. ECF No. 14 at 11-12. Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ cited to the record, including expert testimony, showing that the record was inconsistent with his statements. Tr. 19-21. Plaintiff argues that the ALJ overlooked evidence that supported his statements. ECF No. 14 at 11-12. However, if the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Therefore, the ALJ's first reason is supported by substantial evidence and because there are additional legally sufficient reasons provided by the ALJ, *see infra.,* it too meets the clear and convincing standard.

///

### 2. Reported Alcohol Use

Plaintiff challenges the ALJ's reliance on his inconsistent reports of alcohol abuse in the credibility determination. ECF No. 14 at 12-13. An ALJ may properly consider evidence of a claimant's substance use in assessing credibility. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ's finding that claimant was not a reliable historian regarding drug and alcohol usage supports negative credibility determination); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (conflicting or inconsistent testimony concerning alcohol or drug use can contribute to an adverse credibility finding).

Here, Plaintiff argues that the ALJ relied on inconsistent statements made three years apart by Plaintiff and his brother and because of the time between the statements, the ALJ reliance on them were unreasonable. ECF No. 14 at 12-13. The ALJ cited to Plaintiff's statement that he only drank two light beers a day and his brother's statement that he drank approximately 18 beers a night. Tr. 21. A neurological consultation performed on May 23, 2010 states "He drinks two to four beers a day according to his brother, but his brother also is concerned that Matthew denies his drinking a bit." Tr. 207. Another report the same day states "He states he generally drank two or three beers a day but over the last week or so has had much more alcohol intake secondary to pain." Tr. 215. A psychiatric consultation the next day states "patient states he drinks 'maybe four beers' a day but records reveal that he may be minimizing this and also perhaps hiding his drinking." Tr. 219. Discharge records state "he began drinking significant amounts of alcohol which his brother stated was approximately an 18-pack per night during the week prior to admission." Tr. 205. All these statements were made in close proximity, May 2010, and show that Plaintiff is inconsistent in reporting his alcohol intake. As such, the ALJ's reason was supported by substantial evidence and is legally sufficient.

///

### 3. Inconsistent Statements

The ALJ found that Plaintiff made inconsistent statements regarding his work history, stating that he "denied any work subsequent to his alleged onset day, but later admitted to engaging in small jobs whenever possible." Tr. 22. In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284.

Plaintiff argues that these statements were made as part of his history in medical reports and not as his current activities. ECF No. 14 at 13. While Plaintiff is accurate that the history section of one record lists his past employment as a construction worker, Tr. 211, a later report states, "[t]he patient still works in construction, however due to his neuropathy the patient is unable to work full time." Tr. 300. In his testimony, Plaintiff admitted to trying "to get any little work" he could physically do, but also asserted he could not do what he used to do. Tr. 52. Upon further questioning and the ALJ assuring Plaintiff that the question was not if he could do the work he used to do, but whether he was working part time, Plaintiff stated that he was not working part time. Tr. 53. Here, the ALJ's determination was supported by substantial evidence and meets the clear and convincing standard.

### 4. Exaggerated Symptoms

Plaintiff challenges the ALJ's finding that Dr. Arnold indicated there was significant over reporting on his part. ECF No. 14 at 13-14. The Ninth Circuit has held that a "tendency to exaggerate," among other reasons, can support an unfavorable credibility determination. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Dr. Arnold stated that while Plaintiff's "efforts appeared generally in earnest at face value," his validity scales on the MCMI-III "suggest[ed] his test taking

attitude was overrepresented with themes of self-debasement." Tr. 319. Dr. Arnold continued, "The Millon scoring procedure is designed to adjust for these influences on scale elevations to some extent. Overall, his MCMI-III profile was judged interpretable, with some caution for over reporting. The latter may have also been due, to a degree, by marked clinical depression." *Id*. Plaintiff argues that the ALJ stepped into the role of doctor in interpreting Dr. Arnold's statements to support her finding of over reporting. ECF No. 14 at 13-14. However, Dr. Arnold's statement supports a finding of over reporting and the test scores could be explained only to "some degree" by Plaintiff's depression. As such, the ALJ did not err in drawing the conclusion that Plaintiff was prone to exaggerations.

While this Court finds that the ALJ erred in her treatment of medical source opinions in the file, she did not err in her treatment of Plaintiff's credibility.

## C. Residual Functional Capacity

Plaintiff argues that the ALJ's residual functional capacity determination as presented to the vocational expert in the form of a hypothetical lacks an evidentiary basis because the ALJ failed to include all the limitations addressed by Dr. Haynes. ECF No. 14 at 18-19.

A claimant's residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a). In formulating a residual functional capacity, the ALJ weighs medical and other source opinions and also considers the claimant's credibility and ability to perform daily activities. *See*, *e.g.*, *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

Here, since the case is being remanded and the ALJ is instructed to reweigh the medical source opinions and readdress step two. A new residual functional determination will also be necessary. In addition, the ALJ will call a vocational expert to testify at any additional proceedings.

## REMEDY

The decision whether to remand for further proceedings or reverse and

award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990). *See also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

Considering the record as a whole, it is not clear that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to reweigh the medical source opinions in the record, make a new step two determination, and form a new residual functional capacity determination. The ALJ will also supplement the record with any outstanding medical evidence and take testimony from a vocational expert.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for

additional proceedings consistent with this Order.

   3.   Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED September 14, 2017.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE